Good morning, Your Honors. David Gauntlett for Appellant Petrochem. I'd like to reserve four minutes for rebuttal. This is a case that has very simple coverage principles. First, that if facts as alleged in whatever labeled cause of action trigger a defense because they fall within potential coverage, then the duty to defend is owed, even though no labeled cause of action dovetails with the particular offense at issue. Here, too, are pertinent libel, abuse of process as a form of malicious prosecution. As to libel, the facts that suggest that a libel is alleged appear in the third and fourth counts, which are described as unfair competition claims, but in effect have much deeper fact allegations. Judge Krosky, in the Lamb decision, 2002, explained why facts analogous to those here created the duty to defend because, under pertinent language relevant there, there was disparagement at issue, trade libel. The court also cited the late... Trade libel wouldn't... Trade libel wouldn't do it here because it's excluded, absolutely. But the importance of that is the court also mentioned the Lazerage case from a district court in New York, favorably cited, and explained which, and Lazerage said the following. He says, it seems obvious to this court that wrongfully asserting that a competitor's product infringes patents certainly defames a competitor and disparages his products. That's the issue, whether that form of libel is implicated by the fact allegations that are here at issue. You don't need to look, however, to an Illinois decision to find analogous fact patterns to those present in this case. There's a decision by this court, the Penson Trust Fund decision in 2002, wherein the court made the following observations. It says, California courts have repeatedly found that remote facts buried within causes of action may potentially give rise to coverage. That is precisely what we contend is pertinent here. Moreover, in the Pension Trust case, they cite three decisions, all finding that the counts, which were variously labeled as breach of fiduciary duty, interference with prospective economic advantage, nonetheless gave rise to a duty to defend. Particularly instructive is the court's discussion of the CNA Seaboard case at page 951. Therein, the court said, allegations that the insured had intentionally issued misleading statements, had it filed sham counterclaims for the purpose of maintaining the monopoly position now enjoyed by it, gave rise to potential coverage under offenses of libel as well as malicious prosecution. If you look at the fact allegations that are referenced in the initial pleading, which were admittedly somewhat cryptic, I think you can find that under the broad potentiality of coverage standard, that we have an argument similar to that in Laseradge. Paragraph 17, Petrochem has represented to the marketplace in a false and misleading way that they created and owned the intellectual property associated with their Flex Seal asphalt emulsion product. I think it's implicit in that fact allegation, when inferences are drawn in the insurer's advantages methods were infringing. Lest any question be left at that point, however, contention interrogatories were filed in the case, and responses received in January of 2001, three months before the case settled. And in the response to interrogatory number 15, the response was that plaintiffs filed a suit and made announcements to the general public within the paving industry that defendant was infringing its patents. Thus, the very fact that was found pertinent in the Laseradge case was clarified by contention interrogatories. You've got to remember we're dealing with notice Federal pleadings, discoveries designed to elicit additional facts. The policies ask questions that are often not directly answered one way or another by the complaints, and so that it's not unusual, and indeed it's important to permit delving into those facts as they come forward. In response to interrogatory number 17, the statement is that plaintiffs obtained a patent they knew or should have known was invalid, and then used such patent to deceive the marketplace that it had lawful intellectual property, and further obtained a lawful market advantage. I think a reasonable understanding of these allegations as clarified by the interrogatory responses, and that there were false statements Petrachem made about advantage infringement of patent, which affected customers, because advantage's honesty and integrity was impugned by Petrachem's alleged misrepresentations. If you're a potential purchaser of an advantage product, you do not want to buy from a company that cannot sell you free and clear of intellectual property liens, products, or engage in production methods and production of products that will be ones that it has no ownership interest in and is subject to claims respecting. And so any sourced goods from such a company will not be of the kind represented, i.e., those that you can use without yourself running the risk of being sued for infringement. So that's what we're really talking about here. Is that abuse of process or liable or what? Well, I think it's liable, and I think that there are other fact allegations that suggest abuse of process, much like the CNA case. How is that liable? How that is liable is a — It's very liable. I understand that, but how — Yeah. Well, it's liable because when you impugn the ability of the company to engage in conduct, you suggest that it's dishonest, it's a liar, and therefore, you not only attack its products, but you attack the source of those goods as a company that is not to be trusted. And that's exactly what the Laseradge Court found under analogous facts. And I'll read it again, because it really is directly on point for this case. And again, that case was cited by Judge Krausky in the Land Decision. Moreover, the way they seek to distinguish Laseradge is by saying, well, it doesn't apply to our facts because there was no explicit statement in the initial pleading that, in fact, the defendants were infringing the patents of Petrochem. Well, I've just explained that the interrogatory response clarified what was implicit on that score, and therefore, the attempt to distinguish Laseradge fails. And again, the Laseradge case says it seems obvious, obvious to this Court, that wrongfully asserting that a competitor's product infringes patent clearly defames the competitor and disparages his product. Now, if Don Driscoll, when he had denied a defense, had said, as later became the clear position of Mount Holly, that there was, in fact, trade libel, but not true libel, that problem, that inability of the adjuster to see the distinctions that would allow libel to also give rise could have been addressed. But he didn't. He just said, hey, there's no potential for coverage here. And there's this broad exclusion. And therefore, that's the end of it. I also recommend you look at the Barnett case, which held fact allegations that appellants told third persons that not only is the product libel, but the company, because they're the source of these goods that you can't trust to be as they say and warrant them to be. And But does that include the officers and directors? Well, we don't have a directors and officers policy here. And you'd have to look as to when the company made the statements, the level of knowledge of the people making it. But it's possible that they could be subject to liability. But it's of no moment here because we're just looking at the company's liability, and we're not dealing with the D&O policy specifically. So is there Well, I'm just trying to give you another idea for coverage or something. There was no D&O policy for this small client, Your Honor. It was too small to have procured one in the marketplace. But thank you for the assistance. There's also an important case that talks about an extinction that really troubles a lot of district courts. A lot of district courts say, let me see. I'm going to look to see if the claims as asserted would survive a motion to dismiss. Look at this libel allegation. You know, that's not going to pass a muster. That's not enough for me to feel there's a libel claim. That's not the standard. The standard is potentiality. It's very distinct from whether the claims are, in fact, well pleaded, could survive, create liability. Judge Armstrong in the Lenscrafter case, January 20th, 2005 decision, found that the duty to defend is based on the allegations of the complaint and not what the insurer believes the facts will eventually show. They keep wanting to go into the merits here and saying, well, you're never going to win on this, you know, nested libel claim. Therefore, we don't have a duty to defend it. No, come on down. Help us defend this claim. It's not a very good claim. Indeed, the third count seeks liability for interference with prospective economic advantage and then seeks damages. I mean, I'm sorry, it seeks liability under 17200 and seeks damages. We can't do that. In other words, what they probably had is an interference count that they mispled as a 17200 count, and an interference count is just a remedy for underlying bad acts. And typically, within those are nested claims of disparagement of vital, which is what we have here. Moving to the exclusion, because that's where they spend a lot of their energy, it's a very broad exclusion, admittedly, but even they concede that libel and abusive process don't fall within its ambit. And so the question then becomes, are we within that which the exclusion does not extend to? And it's very important to bear in mind, they bear the burden of proof in showing that the conduct which creates a potential for coverage emanating out of the statements which are allegedly libelous, the conduct which is allegedly abusive process itself is so related to these offenses that they delineate in the exclusion that no possible coverage can arise in all possible worlds. Another interesting fact, Your Honor, I filed five 28-J letters, no response by Malcoly to any of them, none interesting. Two of them were California Supreme Court decisions that, like McKinnon, clarified the burden on an insurer who seeks to limit coverage drastically. In the EMMI case, the court clarified that there's a burden on the application on any limitations of coverage. It's definitely with the insurer. In the Haynes case said, the burden of making coverage detectives conspicuous, plain and clear rests with the insurer. This means more than unambiguity. It's a higher standard. In the Winnicourt case in Massachusetts, the court found defamation alleged where the following particular condominium development were unhappy with the size and value of two recent homes created by the developer, and he believed the developer was in breach of his covenants. That was enough to find defamation in that court's view based on the potentiality standard. And I submit that's fully consistent with California law. In the most recent case by Judge Ware, the court analyzed a somewhat analogous intellectual property exclusion to that here, and found it did not bar a defense. That's the Seagate Technology case, my most recent 28-J letter filed on April 11, 2005. I'll read it because it's interesting. It talks about the carrier's policy. National's interpretation of the general policy entirely omits the italicized language arises out of or directly or indirectly relates to any oral or written statement which is claimed as a violation of legal rights relating to patent trade secret exclusion only applies when a statement itself is claimed as a violation of legal rights related to patent or trade secrets. Neither Convolve nor MIT, the claimants, assert that Seagate's press releases themselves constitute a misappropriation of trade secrets or an infringement of patent. That's true here as well. The unfair competition claims do not themselves depend on facts as we look to them to show defamation or abuse of process coverage, which in itself would be a violation of trade libel, which would in itself be a violation of patent exclusively. Trade libel, yes, it's a claim, but in addition to that, there's defamation. I think if you read that exclusion, look at the language, parse the exclusion language here, look at the Supreme Court case law narrowly interpreting the scope, you'll see that there is properly a defense of in this situation. Also, there's some other out-of-State court cases that are useful. Judge Posner in Curtis Universal found libel tricked out where the specific allegations were the complaint were simply that this ambulance service disseminated false information. Libel tricked out? Well, in other words, the court found that an interference cause of action below it had fact allegations of libel which were sufficient to trigger a defense, even though the interference counts were part of a large lawsuit for antitrust violations. And on the face of it, no label of libel ever came to the surface. And what was going on was that there was a mere allegation that false information was disseminated about this ambulance service's competitor, and there was a campaign to get the public to call the 911 number and ask for one ambulance service over another. Those were the only fact allegations. The court said that's enough to find a duty to defend for libel. And the analysis of Judge Posner in that case is quite interesting. Judge Posner also wrote Cincinnati v. Eastern Atlantic where he said that allegations of false notifications to client that the insured was engaged in wrongful conduct was sufficient to both give rise to coverage for defamation and disparagement. Similar to our facts here, both of those Seventh Circuit cases applying a one-instance Wisconsin overlap. The abuse of process, though. The abuse of process claim, it's the best way to understand it is to look at the allegations of the interrogatory responses, 15, 17, and 18. It clarifies some of the facts. But it's basically that we were pursuing our intellectual property rights that we knew we did not rightfully possess to obtain an unlawful market advantage and communicating with the public about what it is that they could not do, i.e., potentially buy products from our competitor because of our intent to do that. If you look at the How does that become abuse of process? Well, let's say that you merely file a lawsuit where you allege invalidity, non-intringement. That's not enough. But if you also physically assert in the marketplace that the conduct of a competitor is wrongful and you use the allegations in the complaint to effectuate the end of driving the customers away from your competitor, you are improperly using the process of the court to that end. It's something that is not happening in court. It's happening in the marketplace. And you're referring back to these statements that you made in court. But what's the case that's closest? I think that there's not a lot of authority directly in this area. But that What about the Oren case? Hmm? What about Oren? Well, Oren dealt with somewhat distinct facts. And distinct facts in Oren didn't really have there be a separate presentation to the public. In other words, there wasn't a separate conduct outside from the litigation itself. But there's three cases that we cite in our materials that look to conduct outside of a particular proceeding that relates back to a proceeding that I think are instructive in this respect. And those cases are in my materials. And I see that my time is getting short. So I think I'd like to reserve the rest for Bob. Might I repeat, please deport Michael Crow on behalf of Mount Holly Insurance Company and I have with me at the council table Wendy Wolpert of my firm. The problem with trying to shoehorn coverage into a counterclaim where none of the offenses is covered is that you end up in a situation where you're limited only by the creativity of counsel. How can we, after the fact, try to recast this lawsuit or try to recharacterize this lawsuit into something that it isn't so that we can make an argument that we can squeeze it into one of these coverage grants? So that's sort of the nature of coverage litigation, isn't it? It seems to be under Coverage B anyway. You have an underlying lawsuit and because Coverage B, Advertising Injury and Personal Injury Coverage Grant, is an offense-based coverage and only the enumerated offenses are covered, every lawsuit that has nothing to do with any of those enumerated offenses is basically irrelevant. And so what happens is you get a case like this where you have a pleading for patent non-infringement, patent invalidity, both business and professions code 17200, a claim that doesn't even support damages, and a fourth claim for a Lanham Act unfair competition. Plainly none of those four are going to come within the scope of the Personal Injury Coverage Grant. Now, the California courts have seen this game tried for some time and there is case law that's developed, which the Ninth Circuit has summarized somewhat recently in the Upper Deck Trading Card case that came out in 2004. In Upper Deck, the underlying lawsuit didn't allege the type of injury that could potentially be covered and the insured argued, well, it could be amended and there are these three facts out there from which you can infer a covered claim. The Ninth Circuit said that in that situation, that's obviously this court and applying California law, that any such amendment that you might speculate about must be supported by the facts already pled in the complaint. That this isn't a situation where you get to speculate about extrinsic facts or you have, you know, three-fifths of a cause of action alleged or whatever. If you are seeking coverage on the basis of a claim for relief that has not even been pled, you at a minimum need to show the facts in the complaint that show that potential liability. And that is about the only meaningful check on just keeping you from getting into total speculation about ways that a complaint can be amended. And Upper Deck cites Olympic Club versus Interested Underwriters at Lloyd's London, another Ninth Circuit case, the Nichols case from the California Court of Appeal in 1985 held the same thing. That when you get into the range of trying to fit the square peg into the round hole, you need to at least have each of the facts to make out the square peg. And that's simply not alleged here in this underlying case. There was a reference by opposing counsel for Petrochem to the third and fourth claims for relief in the counterclaim. Those are both unfair competition claims, of course, which is expressly excluded in any event. But looking at those third and fourth claims for relief, all they're saying is that Petrochem is asserting its patent rights. That Petrochem is causing confusion in the marketplace by asserting that it owns these patents. If that defames anyone that doesn't own the patent, it defames the whole world. Because the whole point of holding a patent is you have an exclusive right to it. And the rest of the world doesn't. There is not an allegation in those claims that they said anything about advantage. That they said advantage was a bad guy, it's a bunch of dishonest thieves, anything like that. At best, if Petrochem's argument is that if you read between the lines and piece together these facts, you can see a defamation claim. It's just not there. There is no claim that advantage is being bad here. There's a claim that Petrochem owns the intellectual property rights. And if you look at the injury that advantage claims on the fourth claim for relief, which is the only claim for relief in this lawsuit that even we can talk about the others as well. But in the fourth claim for relief, when you get to paragraph 21, which is where they're describing their injury, here it is. There is injury or likelihood of injury to advantage ceiling systems in terms of its loss of clearly understood title to its own intellectual property and a resulting loss of the value thereof. That's not an allegation that, you know, our integrity has been impugned in the marketplace, that we've been, a personally reprehensible conduct has been alleged. That's an allegation at best of injury to a property interest, of trade libel, at best. And I think you need to squint your eyes to even get there. And our policy squarely excludes trade libel, this intellectual property hazard exclusion. But that's as close as it gets. Now there has been reference to some interrogatory answers, I think, that were served quite late in the underlying action, almost two years after this claim was tendered and denied in a series of letters. In each letter, Mount Holly's claim handler saying, if you have any additional information you'd like to share, please send it to me. And all of the things the claim handler should say to show we're still listening. Two years pass, and then we hear that there were some interrogatories served. Before we get to that, let's come back to this unfair competition claim. You say all that Advantage was asserting here is that there were assertions of, I don't know if it was, Advantage was asserting, excuse me, having these patents asserted against it. Right. More than that, it goes on to say when plaintiffs well knew or should have known that such products did not infringe, and that the patents ensued were invalid or unenforceable, which sounds like a sort of classic patent misuse allegation. So if that's what they're doing, not that they're simply in good faith asserting their patents, but in fact they're doing it in an improper way, why doesn't that impugn their motivations and their integrity? It may impugn Petrochem's motives as far as asserting its patents. But if the question is, is Advantage being defamed? I mean, the question is, this is Advantage's counterclaim by which they're trying to get the cost of prosecuting their patent infringements to be paid. It's Advantage's counterclaim. And if you're looking at Advantage's counterclaim, the question is, how is Advantage contending that it was harmed? It may well have been harmed by unfair competition, if that is its allegation, which you take as true and so on, that they're alleging unfair competition by an attempt to whatever monopolize or corner the market by asserting a patent. And you see those sorts of claims, obviously, as responsive pleadings and intellectual property suits. It's not a libel claim. It's not a defamation claim. The type of injury Advantage is alleging is at best an injury to its property interest in the products. And I think even as counsel was characterizing the claim, he was saying, customers might not want to buy a product if there's a cloud as to its title, if there's a question as to whether they're going to be sued for patent infringement. Fine, if that's the injury, that's at best trade libel. And that's even assuming you could get into falsity and all of those other things that simply haven't been alleged. And so, I guess the point is, and it comes to the abuse of process point, too, it's good to talk about our exclusion here. Our exclusion is broad. This exclusion does squarely bar every claim in this underlying counterclaim. But they don't even satisfy the first step of an enumerated offense under the Personal Injury Coverage Grant. There is no embedded defamation or libel claim here. And to the extent one is being formulated, the best they can articulate it, it would still fall into trade libel, even if you were to kind of disregard the fact that no false statements about Advantage were ever alleged in Advantage's counterclaim. So, on the abuse of process count, too, there is no allegation factually anywhere in this complaint that Petrochem took court process and abused it, and used it to bludgeon people. Again, at best, they're saying they assert intellectual property rights. They've sued on them. That's, you know, people with patents, brain suits on patents. There's no separate contention of a misuse of a judicially issued process or order. And certainly, all of the noise about deceit before the patent office, even if it were relevant, isn't enough to get them there. Because not only did that, of course, occur years before even the policy incepted, but in any event, it's irrelevant because you can't premise an abuse of process claim on conduct before the patent office. And there's been case law saying that. That's not a liability defense. It's just further confirmation that there was no claim pled. There was no claim pled for that. The fact that the claim doesn't exist and is incognizable is consistent with the fact that it wasn't pled. But if you're going to apply this upper deck standard, which is fully consistent with other California law, and say, are each of the facts necessary to plead an abuse of process claim somehow sprinkled throughout this complaint that sues for a lot of other things but doesn't sue for abuse of process, then you do need to look at the question of what are the elements of that claim and are those facts pled? Because if they aren't, you're just speculating. And you can't speculate your way into coverage. So that's the response on that. Now, second, even if, and I'm happy to go back to the interrogatories. I don't know if Your Honor cut me off briefly when I was mentioning that. The fact is, those were simply never provided to Mount Holly. We saw them for the first time in August of 2004, I'm sorry, of 2002, August of 2002, about four months after the underlying case was over. So those were not provided during tender. They were not provided even as they issued in January of 02. They weren't provided on May 1st of 02 when we got a re-tender. It didn't even enclose them. In the case, it just said on April, so it wouldn't have mattered anyway. We finally get it in August of 2002 attached to the motion for summary judgment. That is the first time we ever saw those interrogatories. Now, we can go into the details of the interrogatories. Do they or don't they, in fact, support some nested claim? You know, one interesting fact in there is, of course, the counterclaimant's lawyer disavowing that he has pled any claim for abuse of process, malicious prosecution, libel, or slander. So it's kind of interesting that when put to it, he confirms that, no, I've not sued for those things. Setting all that aside, they're irrelevant. They can't sandbag us like that. If they want us to consider that in the course of the claim process, they need to submit it to us and ask us to consider it at a relevant time, not generate evidence 21 months after the denial, keep it to themselves, settle the case, and then give it to us four months later. And so we would respectfully submit that those interrogatories are completely irrelevant because they were never part of the claim process. They couldn't give rise to a duty to defend because by the time they were given to us, the case was over. There was nothing to defend. And so, you know, I can leave it at that or I can go into more detail on it. I think they don't get Petrochem where it needs to be anyway. Finally, even if the coverage grant were satisfied, that is, even if you could shoehorn a claim into this counterclaim for defamation or for abuse of process, malicious prosecution, whatever they're going to call that, the fact is that just satisfies the coverage grant. And you've still got the problem of the exclusion. And the exclusion, as the opposing counsel noted, is quite broad. And if I can pull it out, it excludes coverage for claims of personal injury. So that's assuming arguendo, the coverage grant is satisfied. All they've got is they've satisfied the definition of personal injury. The exclusion applies to personal injury arising out of the intellectual property hazard. And the intellectual property hazard is defined to include a suit or claim that's in any way relating to or arising out of patent infringement, disparagement of a person's organization's goods, products, or services, unfair competition, trade libel or slander, theft of intellectual property, theft of trade secrets, all of these things. So even if there is a claim, you know, other than those enumerated within the listing of this definition, I mean, you could have a personal injury claim that satisfies the coverage grant. It would still be excluded if it relates to or arises out of a claim that involves any of these components. And, you know, the point of this exclusion is pretty clear from looking at it, it's pretty clear from reading it, it's a straightforward, broad exclusion, is that the company is not insuring these claims and suits that relate to these various intellectual property and business tools. Do I read the policy structure correctly that it actually starts out insuring those under personal injury? Under coverage B of the personal injury coverage grant, there are a series of enumerated offenses, and some of those enumerated offenses are, some of them are in this list, not all of them. That is, there's false arrest. So it basically says, we're going to cover you, and then you get to the exclusion, but guess what, we're not going to cover you. Well, the coverage grant is part of a standard form. You see insurance services office down there at the footer running on the coverage form. The ISO forms have coverage A and coverage B. That's no surprise that they have for a few decades now. And then you have endorsements that modify the coverage forms. And that's no surprise either. Insurers and brokers and everyone understand that's the way it works. And there's nothing unclear or ambiguous about this exclusion. It comes in and it takes out coverage B to the extent it relates to these intellectual property hazards. And I want to make it very clear, there's still quite a bit of coverage B that is not eliminated by this. And I think there's been an argument that this somehow creates illusory coverage. It does not. First of all, most of coverage A sails through unscathed, and that's what most businesses buy insurance for, for the most part, is bodily injury and property damage coverage, the traditional CGL coverages. Second is even within coverage B, there are offenses that aren't listed and don't have anything to do with intellectual property, including false arrest, detention, or imprisonment. That's offense category A. And offense category C, where it receives quite a bit of prior litigation, the real estate torts, wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling, or premises, those are both offense categories that are not affected by the types of claims you're typically going to see in this intellectual property hazard. And even as to the other offense categories, including the malicious prosecution, category B, and the libel, slander, trade libel type allegations of category D, you could still have claims presented that are not within the scope of the exclusion. If they're just either, you know, say you're facing a malicious prosecution or abuse of process case that has nothing to do with intellectual property, has nothing to do with unfair competition. It's just you brought a contract action against a supplier, and it was without probable cause, and brought with malice, and favorable termination on the merits, and you draw a malicious prosecution suit. You would still have the defense under the policy for that type of suit. So it's not a situation where coverage B is wiped out entirely. Similarly, if you have a personal libel or defamation of, again, a committed in the course of your business, you could be talking to someone else about a vendor, or a supplier, or a contractor, or a government regulator, or someone else, and not in a competitive tort setting, because unfair competition isn't going to be covered. And you can defame that person. You can just defame them personally. You can say he's corrupt. He's on, you know, this government regulator is corrupt, and, or this contractor is on drugs. You can defame people in a way that it has nothing to do with intellectual property. It has nothing to do with trade libel. And those claims, assuming they come in and they satisfy the coverage grant and timing and all of that, can give rise to potential coverage. So the illusory argument, I think, doesn't really work under the law anyway. I don't want to devote too much time to it if your honors don't have particular questions about it. But we will say that not only is coverage A largely unaffected, a fair amount of coverage B goes to unaffected. But what this exclusion does exclude are claims like this, where you basically cannot articulate any theory of recovery in that counterclaim by advantage that isn't fundamentally premised on, related to, arises out of patent infringement and unfair competition, or at best, trade libel. And in light of that, this is exactly the type of suit that, under the contract, was intended to be excluded. And Mount Holly properly declined coverage for this. Judge Gonzalez, who entertained not only this coverage case, but also the underlying action, you know, as your honors have no doubt seen, devoted a substantial effort to a couple of 20-page decisions in this case. And just as your honors can read those complaints and counterclaims and know what they're about, Judge Gonzalez wasn't fooled either. She knew what the underlying case was about. And the underlying case was not about abuse of process or libel. The underlying case was about patents and unfair competition. And those risks were excluded. So unless your honors have questions, thank you. The Declarations page says we have express advertising and personal injury coverage. Nowhere does it explain that they're going to gut virtually 95 percent of that. It's not that, as written, it's illusory. It's as construed by them in light of the way they interpret their exclusion. If you look at Seagate, you'll see what they're doing. They're forgetting that the only thing that counts is whether we first have personal injury coverage. What was a libelous event? Okay. The libelous event is us basically stating that there's a question as to the viability of the source of goods of Advantage because of the products itself, because of the way it's infringing methods. And a reasonable understanding of the allegations is we made false statements about the infringement of patent, which affect commerce because the honesty and integrity of Advantage are questioned. Look carefully at Lamb. Look carefully at Laser Edge and Cincinnati from Judge Posner. You'll see these cases emphasize whether you can have both libel and you can have trade libel in the same situation. Unfair competition. They don't define it. As Judge Craigerson sagely noted in Keating's decision before the Ninth Circuit here, the Bank of the West Court made clear that the overwhelming majority of courts have interpreted unfair competitions limited to palming off. This is an exclusion. They're interpreting it so broadly that it would eviscerate Bank of the West and say it may apply to 17200 claims. You can't have it both ways. You have narrow exclusions. Unfair competition that means anything more than palming off would eviscerate the coverage for trademark, trade dress, trade libel, which could otherwise be within a very broad notion of what unfair competition is. Moreover, they didn't raise it in the underlying action. It's nowhere near that argument. And then there's the Doe v. Heliconti Court case with this circuit. You can't raise issues for the first time on appeal that you didn't raise in the lower court in prompt to do so. Bottom line is they don't get the facts, the labels distinction. Facts can create liability for libel and abuse of process no matter what the label. This isn't an upper deck situation because there's no amendment that we're saying is pertinent. We're saying that the claims as pled, not terribly clearly, not terribly articulately, if you understand them in light of the duty to defend, and especially as clarified by later interrogatory responses, reveal the defense. Those interrogatory responses were available to them. Doesn't matter as long as we gave them prompt notice of the claim, they are facts that the court can look to to clarify what the potential for coverage that was available there under is. If you allow them to have this exclusion interpreted the way they argue it here, you are going to go against the dictates of the Seagate case, and you are also going to be inconsistent with the three Supreme Court decisions narrowly construing exclusions in this area. Thank you. Thank you. All right, matters submitted. We'll come to the remaining two matters. That's Stardust and Vista del Santa Barbara. All right, so the Stardust gets 15 minutes, and the other case gets 10.
judges: Pregerson, Fisher, Bybee